**AMERICAN BAKERY & CONFECTIONERY WORKERS INTERNATIONAL UNION AND LOCAL UNION NO. 245, ABC, AFL–CIO, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Guy's Foods, Inc., Intervenor.

**GUY'S FOODS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 20189, 20347.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1967.

Decided May 18, 1967.

Mr. Ronald Rosenberg, Washington, D. C., with whom Mr. Henry Kaiser, Washington, D. C., was on the brief, for petitioners in No. 20189.

Messrs. Harry L. Browne and James R. Willard, Kansas City, Mo., both of the bar of the Supreme Court of Missouri, pro hac vice by special leave of court, with whom Mr. Thomas E. Shroyer, Washington, D. C., was on the brief, for petitioner in No. 20347.

Mr. Gary Green, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, were on the brief, for respondent.

* Circuit Judge Fahy became Senior Circuit Judge on April 13, 1967.

Before FAHY,* McGOWAN and TAMM, Circuit Judges.

FAHY, Circuit Judge.

The petition of the International and the Local, both organizations referred to in combined fashion as the Union, and the petition of Guy's Foods, Inc., the Company, are from the some order of the Board, and have been consolidated in this court. The order grew out of unfair labor practices charged against the Company by the Union, followed by Board complaint, hearing before a Trial Examiner, exceptions, and Board decision and order. Subsidiary proceedings before the Regional Director had previously been had. The details of the steps leading to the final decision and order, and the basis therefor, which, with a somewhat technical modification by the Board, were essentially those of the Trial Examiner, will doubtless appear in the reports of Board decisions. They need be referred to now only as required to understand why, after consideration of the careful presentations by the parties, we find no reason in law for refusing to enforce the order in the form in which it left the hands of the Board.

The findings that the Company, in the face of organizing efforts of the Union, violated Sections 8(a) (1), (2), and (3) of the Act are supported by substantial evidence in the record considered as a whole, as required by Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The remedial provisions of the order based upon findings of violations of Section 8(a) (1) and (3) are those usual in such cases, with such adjustments as the facts of this case warrant, and are within the settled competence of the Board.[1]

The findings of 8(a) (2) violations and the remedy based thereon are the occasion for some comment. The findings themselves grew out of evidence of assistance by the Company to the Associa-

1. An 8(a) (1) and (3) violation found was the discharge for union activity of employee Richardson. She was later reinstated.

tions of Packers and Drivers Union, a labor organization which the Board had certified in December 1956, as the representative of the employees of the Company in an appropriate unit comprised of three Company plants located in different cities. One of a series of collective bargaining agreements between the Company and Association was to expire February 14, 1965. In accordance with its terms the Association notified the Company in November 1964 of its termination on the February date, and requested negotiations for a new agreement. Between the November and February dates the Union filed three petitions requesting that it be designated as the representative of the employees of the Company at each of the three Company plants. These petitions were dismissed as not comprising an appropriate unit. The Company and the Association proceeded to enter into a new agreement February 14, 1965. By its terms, however, the agreement was to be submitted for approval to the membership of the Association. Before approval was obtained the Union again petitioned for certification as representative, this time in the three-plant unit. The Board, considering this unit appropriate, held an election on May 5, 1965. The Association won. The Union then filed objections to the election based on Company conduct alleged to have affected the result. The Union asked that the election be set aside. On June 14, 1965, the Association notified the Company it had won the election and requested the wage increase which was provided for in the February 14 agreement. The Company responded by making the increase effective.

In various respects the Board found that the Company had assisted, contributed support to, and interfered with the administration of the Association in violation of Section 8(a)(2), and (1). The Company contends in connection with the findings of violations of Section 8(a)(2) that the Board used the rigid standard applicable to company conduct under the *Midwest Piping* doctrine. Under that doctrine there is an "obligation of neutrality" where "a neutral employer, on being confronted with conflicting representation claims by two rival unions, 'would not negotiate a contract with one of them until its right to be recognized as the collective bargaining representative had been finally determined under the procedure set up under the Act.'" citing "Matter of Elastic Stop Nut Corporation, 51 N.L.R.B. 694, enf'd, 142 F.(2d) 371 (C.C.A.8)." Midwest Piping & Supply Co., 63 N.L.R.B. 1060, 1070. The Company argues that its conduct found to have violated Section 8(a)(2) occurred during a period when there was no rival union validly seeking representation of the employees, because the Union's petition for election was barred by the contract-bar rule or was untimely under the sixty-day insulated period referred to in Deluxe Metal Furniture Co., 121 N.L.R.B. 995. The Union's election petition was filed on February 26, after the Company and the Association, on February 14, had entered into a new agreement.[2] That agreement, however, was subject to ratification, and was pending ratification when the Company, as

---

**2.** The Union's first petitions for election were filed on December 10 and 14. The Regional Director did not deny them until February 5, leaving the Company and Association only nine days in which to complete their negotiations before their existing contract expired. The Company urges that it should have been granted a sixty-day insulated period or at least a reasonable period after February 5 in which to negotiate and execute a contract with the Association free from the filing of a representation petition by another union. Had this request been granted, the Company contends, the election petition filed on February 26 by the Union would have been untimely, there would have been no valid conflicting claim for representation, and the *Midwest Piping* doctrine would not be the appropriate standard to evaluate the Company's conduct. Our interpretation of the Board's decision makes it unnecessary to consider whether the election petition was untimely under the sixty-day insulated period or barred by the contract-bar rule.

the Trial Examiner found, in violation of Section (8) (a) (2), permitted the Association to hold its meeting on Company property, during working hours, paid employees for the time so spent, urged employees to attend such meeting, checked off dues to the Association from the wages of the employees, distributed badges shortly before the May 5 election, urged employees to vote for the Association and permitted supervisors, who pinned badges on employees at work, to wear such badges in the plant, etc., constituting "that assistance to Association which is proscribed by Section 8(a) (2) of the Act." The Trial Examiner said, "I so find and conclude." True it is that the Trial Examiner stated that the *Midwest Piping* doctrine placed the Company under a duty to refrain from giving assistance to the Association, or promoting its prestige in the eyes of the employees, a duty in respect to which the Trial Examiner said the Company failed as above set forth; but when we note that the Trial Examiner also stated that the *"Mid-west Piping* rule afforded no impediment to Respondent [Company] and Association agreeing upon contract terms" we think a fair interpretation of the Board's decision, in adopting the findings of the Trial Examiner as to the Section 8(a) (2) violations, is that the conduct referred to was not found violative of Section 8(a) (2) simply because the "rival-union" concept required neutrality, but because, that aside, the conduct was contrary to Section 8(a) (2) in any circumstances.

The Board in its order affirmatively provided that the Company withdraw and withhold recognition of the Association as the representative of the employees unless and until certified by the Board. This provision for relief, based on the 8(a) (2) violations, is a means of dissipating the effect of the conduct of the Company in bringing its assistance to the side of the Association, especially during the period the agreement of February 14 was up for ratification by the

Association membership. It would be inconsistent with the underlying purpose of the Act to approve as representative of the employees a labor organization not freely chosen, or to leave in effect a contract with such a representative which was negotiated or ratified under the influence of the violations.

The order of the Board does not disestablish the Association as though it were a company dominated organization. It does no more than remedy a particular situation, including a contractual arrangement, unlawfully influenced by the Company's assistance of the Association and interference with the free choice of the employees. Should the Association be chosen free of such influences the order of the Board does not preclude recognition of the Association as the bargaining representative.

It was within the discretionary power of the Board to appraise the situation as it did. For this reason we do not accept the position of the Union that the Board should have ordered the Association disestablished. In this respect, as also with respect to the Board's refusal to order the Association to reimburse employees for certain dues withheld from their wages, we find no solid reason for disturbing the solution adopted by the Board. Although we need not say such a provision would have been invalid if included in the order, the facts of the case, considered in light of Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. NLRB, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1, restrain us from holding that the Board was required to include it. As the Board points out in its brief, the Association had been lawfully chosen as the employee representative before the unlawful conduct found in these proceedings, and the checkoff was not shown to be attributable to that conduct.

The Petitions of the Company and the Union are denied.

The Order of the Board is enforced.